KUYKENDALL *v.* STATE.

(In Banc. June 10, 1946.)

[26 So. (2d) 471. No. 36160.]

Wills S. Wells, of Jackson, for appellant.

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, for apellee.

Roberds, J., delivered the opinion of the court.

Kuykendall was indicted for and convicted of the murder of Winston Monroe Ayers, the jury imposing a life sentence in the state penitentiary.

The drama occurred at two places—the first part of it was at the home of appellant in Columbus, Mississippi, and the second part occurred at the home of Ayers, some three blocks from appellant's home. Kuykendall contends on this appeal that all of the evidence of events which took place at the home of appellant was incompetent and its admission is reversible error.

The family of appellant consisted of himself, his wife, and their fourteen year old son Herbert. A Mrs. Enochs had lived in the home for about three years, renting two rooms and doing light housekeeping. Appellant was engaged in the business of raising bull dogs for sale, as well as operating a dance hall and drink stand. On the

morning of the tragedy and about fifteen or twenty minutes after seven o'clock appellant put three of his bull dogs in his automobile for the purpose of exercising them, taking Herbert with him. The dogs were on leashes which were held by Herbert as the dogs were caused to run by the side of the moving automobile. They were gone about fifteen minutes. When they returned the bull dogs were placed in the hall of the home, in which there was a dog of another breed. Appellant then untied what is described in the record as a vicious bull dog and was proceeding to place this dog in the car for the purpose of being likewise exercised. His car was parked just outside the windows of the apartment of Mrs. Enochs. Mrs. Kuykendall called out to him from a window in that apartment, telling him the dogs were causing a disturbance in the house, and they should be removed; whereupon appellant seems to have gone into a rage, saying Herbert had mixed the dogs and he began to slap and strike Herbert. His wife told him he should not whip Herbert for something he had done himself; whereupon he told his wife, according to the State's proof, to "shut her God damned mouth . . ." else "he would come in there and slap her God damned head off . . ." "I might as well kill you this morning, get it over." He then ran into the house. He tried to break in the door to the Enochs apartment to get to Mrs. Kuykendall, but failing, he went back out and he and Herbert went away in the automobile to exercise the vicious dog. They returned in ten or fifteen minutes and while appellant was tying up the dog he told Herbert to clean the dog yard. Mrs. Kuykendall, being much frightened by the cursing and threatening attitude of appellant, slipped Herbert away from the home and hurried three blocks to the home of her father, the deceased. Appellant called out in an angry tone for Herbert, who, of course, did not answer; whereupon appellant proceeded to get into his automobile and drove to the home of Ayers. He arrived there some three to five minutes after Mrs. Kuykendall and Herbert

had reached the Ayers home. The foregoing constitutes the first part of the tragedy, the proof of which appellant says was incompetent and reversible error.

It is necessary for us to briefly describe the subsequent events. When Mrs. Kuykendall arrived at the Ayers home with Herbert she was crying and very much excited. Her sister, Mrs. Kleinschmidt, whose husband was in the Army, and who was keeping house for Ayers, her father, and her little girl Betty, a Mrs. Dyson and Mr. Ayers were there. Mr. Ayers was tacking some wire on the front porch with a hammer. Mrs. Kuykendall and Herbert went into the house, Mrs. Kleinschmidt fastening the front door behind them. Appellant arrived and began to try to break in the door, "cursing and yelling for Herbert." Mrs. Dyson, who was a neighbor and happened to be visiting Mrs. Kleinschmidt at the time, thought best to leave. She went out the front door onto the porch and appellant proceeded into the house. Mrs. Dyson told Mr. Ayers he had better go into the house; that Mrs. Kuykendall needed help. Mr. Ayers proceeded into the house. Mrs. Kleinschmidt and Mrs. Dyson say he did not carry the hammer with him. Herbert said he did have the hammer. Naturally Mrs. Kuykendall could not testify against her husband. Mr. Ayers said to Kuykendall, "Charlie, can't you come to some agreement?" According to Mrs. Kleinschmidt and Herbert, Kuykendall then pulled his pistol and shot at Mr. Ayers three times. One bullet entered the left breast, one the left hip, and the other missed its object. Mr. Ayers expired before medical aid could reach him. Mrs. Dyson did not see the actual shooting but she and another next door neighbor said the shooting took place in about one minute after Mr. Ayers left the front porch. Appellant testified that Ayers was advancing upon him with the hammer and he shot him in self-defense. As stated, Mrs. Kleinschmidt and Mrs. Dyson said deceased did not have the hammer in his possession, and they, and also Herbert, testified Mr. Ayers

was not advancing upon appellant. A neighbor who heard the shots and rushed to the scene, testified that the hammer was in the hall and the body of Mr. Ayers was on the floor in the dining room, several feet away. The plea of appellant was self-defense. Whether he killed Ayers in self-defense was, of course, a question for the jury under this proof. The jury found against him on that issue.

It is thus seen that about thirty minutes elapsed from the beginning to the end of these events. The crucial question in the case is whether Kuykendall or Ayers was the aggressor. Testimony of the happenings at the Kuykendall home disclosed the mental attitude of Kuykendall and had a direct bearing upon his likely actions immediately subsequent at the Ayers home. All of the evidence shows he was more or less in a violent rage, likely to attack anyone interfering with him. In addition to that the events at the Ayers home would not be understandable to the jury without proof of the events immediately preceding. In other words, these were continuing acts, a series of events of similar nature, all connected, all happening within a short period of time, and those occurring at appellant's home led up to the tragedy at the Ayers home, and proof of such prior events was necessary and helpful to a correct understanding of the main action, throwing light upon the intentions, conduct and attitude of appellant. Proof of such prior events, thus connected and interwoven with the immediate facts of the killing was competent. McCormick v. State, 159 Miss. 610, 132 So. 757; Anderson v. State, 171 Miss. 41, 156 So. 645.

Affirmed.